**IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE**

In re

Case No. 07-30007

ANTHONY DALLAS TUCKER, JR.

      Debtor

**MEMORANDUM ON OBJECTION TO
CONFIRMATION OF CHAPTER 13 PLAN**

**APPEARANCES:**    BOND, BOTES & LAWSON, P.C.
    Cynthia T. Lawson, Esq.
    5418 Clinton Highway
    Knoxville, Tennessee  37912
    Attorneys for Debtor

    HODGES, DOUGHTY & CARSON, PLLC
    Thomas H. Dickenson, Esq.
    Post Office Box 869
    Knoxville, Tennessee  37901-1869
    Attorneys for Y-12 Federal Credit Union

    GWENDOLYN M. KERNEY, ESQ.
    Post Office Box 228
    Knoxville, Tennessee  37901-0227
    Chapter 13 Trustee

**RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE**

This contested matter is before the court on the Objection to Confirmation of Chapter 13 Plan (Objection to Confirmation) filed on January 31, 2007, by Y-12 Federal Credit Union (Credit Union). The court held a preliminary hearing on the Objection to Confirmation on February 28, 2007, at which time, the parties agreed that the matter could be decided on stipulations and briefs. The parties filed Stipulations of Fact Relating to Objection to Confirmation Filed by Y-12 Federal Credit Union on March 14, 2007. The Credit Union filed its Brief on March 27, 2007, and the Debtor filed his Brief on March 28, 2007.[1] Because the identical issues raised by the Credit Union in the present case were decided by the court in two prior cases, *In Re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006), and more recently in *In re Steakley*, ___ B.R. ___, 2007 WL 259570 (Bankr. E.D. Tenn. Jan. 17, 2007), the Objection to Confirmation will be overruled.

The Debtor filed the Voluntary Petition commencing his bankruptcy case under Chapter 13 of the Bankruptcy Code on January 2, 2007. The Credit Union is a secured creditor of the Debtor, holding a claim in the amount of $21,469.42, secured by a 2002 Ford F-150 Truck (Ford). The Debtor's Amended Chapter 13 Plan (Plan), filed on February 13, 2007, proposes weekly payments of $335.00 for 60 months, plus payment of all tax refunds in excess of $1,500.00 for 2006, and $1,000.00 for each year thereafter, resulting in a projected dividend of 20-70% to nonpriority unsecured creditors.[2] With respect to the Credit Union's claim, the Plan proposes to surrender the Ford "in full satisfaction" of the debt with "[n]o deficiency claim allowed."

---

[1] The court also takes judicial notice, pursuant to Rule 201 of the Federal Rules of Evidence, of all documents filed in the Debtor's bankruptcy case.

[2] The Amended Plan mirrors the original plan filed on January 2, 2007, with the exception of the amount of the Debtor's 2006 tax refund to be paid into the Plan.

Pursuant to the March 2, 2007 scheduling Order, the sole issue the court is called upon to resolve is "[w]hether 11 U.S.C. § 1325(a)(5)(C) (2005), in conjunction with the 'hanging paragraph' in 11 U.S.C. § 1325(a) (2005), allows the Debtor to surrender Y-12 Federal Credit Union's collateral, a 2002 Ford F-150 pickup truck, 'in full satisfaction of debt.'"

Section § 1325(a) provides, in material part:

> (a) Except as provided in subsection (b), the court shall confirm a plan if—
>
>> . . . .
>
>> (5) with respect to each allowed secured claim provided for by the plan—
>>
>>> (A) the holder of such claim has accepted the plan;
>>>
>>> (B)(i) the plan provides that—
>>>
>>>> (I) the holder of such claim retain the lien securing such claim until the earlier of—
>>>>
>>>>> (aa) the payment of the underlying debt determined under nonbankruptcy law; or
>>>>>
>>>>> (bb) discharge under section 1328; and
>>>>
>>>> (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
>>>
>>> (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
>>>
>>> (iii) if—

>> (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
>
>> (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
>
> (C) the debtor surrenders the property securing such claim to such holder;
>
> . . . .
>
> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period[3]]] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing[.]

11 U.S.C. § 1325(a) (2005).

In *Ezell*, the court determined that 11 U.S.C. § 1325(a), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, removed the ability of secured creditors to bifurcate their claims under 11 U.S.C. § 506(a) (2005) when the provisions of the alphanumeric paragraph located at the end of § 1325(a) are met. Accordingly, under this "Anti-Cramdown Provision," once the requirements therein are met, debtors wishing to retain collateral under § 1325(a)(5)(B) must pay the full amount of the secured claim, and debtors wishing to surrender collateral under § 1325(a)(5)(C) do so in full satisfaction of the debt. *Ezell*, 338 B.R. at 340. In *Steakley*, the court expanded upon *Ezell*, holding that the Bankruptcy Code preempted state law with

---

[3] The court supplies this word which was presumably inadvertently omitted by the drafters of the statute.

respect to modification of creditors' rights, and § 1325(a)(5)(C) in conjunction with other provisions of the Bankruptcy Code, including 11 U.S.C. § 1322 (2005) and the Anti-Cramdown Provision, leaves no avenue for a creditor to properly claim a deficiency balance under state law or the Uniform Commercial Code. *Steakley*, 2007 WL 259570, at *6.

All of the applicable requirements set forth in the Anti-Cramdown Provision apply in this case. The Ford was purchased by the Debtor for his personal use on May 5, 2005, within the 910-day period set forth in the statute, and the Retail Installment Contract executed by the Debtor constitutes a purchase money security interest securing the Ford. Accordingly, based upon the *Ezell* and *Steakley* decisions, which are controlling in this court on this issue, § 506(a) does not apply to the Credit Union's claims, the Anti-Cramdown Provision solidifies its position as a fully secured creditor of the Debtor without regard to whether the proposed treatment is retention or surrender, and there is no avenue by which the Credit Union may bifurcate its fully secured claim and file a deficiency claim. The Objection to Confirmation filed by Y-12 Federal Credit Union will be overruled, and the Debtor's Plan will be confirmed by a separate order.

FILED: April 12, 2007

                BY THE COURT

                /s/ RICHARD STAIR, JR.

                RICHARD STAIR, JR.
                UNITED STATES BANKRUPTCY JUDGE